IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COACH, INC. and COACH SERVICES, INC., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 09-4215 (JBS) |
| v. | |
| OCEAN POINT GIFTS and DOES 1 THROUGH 10, | **OPINION** |
| Defendant. | |

APPEARANCES:

Erica Susan Helms, Esq.
STERNS & WEINROTH, PC
50 West State St.
Suite 1400
PO Box 1298
Trenton, NJ 08607-1298
     Counsel for Plaintiffs

**SIMANDLE**, District Judge:

     This matter comes before the Court on Plaintiffs Coach, Inc. and Coach Services, Inc.'s ("Coach") motion for default judgment (Docket No. 9) as against Defendant Ocean Point Gifts ("Defendant").  For the reasons expressed below, the Court will grant Plaintiffs' motion.

**I.    BACKGROUND**

     **A.    Facts**[1]

_____

[1]The facts recited herein are derived from the Plaintiffs' supporting declaration, including private investigator Richard H. Smith and Coach's Manager of Intellectual Property April E. Pyatt, and documents attached thereto.

For over sixty years Coach has been in the trade of luxury fashion accessories.  Coach manufactures, markets, and sells a variety of goods including, most prominently, handbags.  Coach sells its goods through its own specialty retail stores, department stores, catalogs, and via the Internet at www.coach.com.  Coach owns a number of trademarks, trade dresses, and design elements/copyrights that it uses on its products.

Based on information obtained from a private investigator and Coach staff, Coach alleges that Defendant Ocean Point Gifts has sold counterfeit Coach items at its store located at 1631 Boardwalk, Atlantic City, New Jersey.  (Compl. ¶ 28; Smith Decl. ¶¶ 3-4.)  For example, Defendant sold a $12.99 imitation of a $200 Coach wallet that included a paper insert reading "The Coach Signature Collection" with contact information for Coach Consumer Service.  (Smith Decl. ¶¶ 5-6.)  Ocean Point Gifts has not been given permission to use the Coach trademarks.  (Pyatt Decl. ¶ 11; Compl. ¶ 33.)

Plaintiffs served Defendant Ocean Point Gifts with a copy of the summons and complaint on August 23, 2009.  (Docket No. 5.)  On November 20, 2009, nearly three months after process was served, the investigator returned to the store and found that the Defendant was still selling counterfeit Coach products.  (Smith Decl. ¶ 8.)  Coach alleges that Defendant Ocean Point Gifts has engaged in selling counterfeit goods knowingly and intentionally

2

for the purpose of trading on the reputation of Coach and that Defendant will continue to do so unless otherwise restrained. (Compl. ¶¶ 34, 36.)

### B.    Procedure

On August 18, 2009, the Plaintiffs filed a nine-count Complaint against Ocean Point Gifts and ten John Does presenting claims of trademark counterfeiting (15 U.S.C. § 1114), trademark infringement (15 U.S.C. § 1114), trade dress infringement (15 U.S.C. § 1125(a)), false designation of origin and false advertising (15 U.S.C. § 1125(a)), trademark dilution (15 U.S.C. § 1125(c)), copyright infringement (17 U.S.C. §§ 501-513), trafficking in counterfeit trademarks (N.J. Stat. Ann. § 56:3-13.16), unfair competition (N.J. Stat. Ann. §§ 56:4-1, 56:4-2), and unjust enrichment. The Defendant was properly served on August 23, 2009, but has failed to respond. On November 10, 2009, Coach filed a request for default, which the Clerk of Court entered pursuant to Rule 55(a), Fed. R. Civ. P., on November 12, 2009. Coach now moves the Court to enter a default judgment against Defendant and seeks a permanent injunction, statutory damages, and an award of attorney fees, investigator fees, and costs.

## II.  DISCUSSION

Fed. R. Civ. P. 55(b)(2) authorizes the entry of a default judgment against a party that has defaulted. However, default

judgment is not a right.  Franklin v. Nat'l Mar. Union of Am.,
No. 91-480, 1991 WL 131182, at *1-2 (D.N.J. July 16, 1991)
(quoting 10A Wright, Miller, & Kane, Federal Practice and
Procedure § 2685 (3d ed. 1998)), aff'd, 972 F.2d 1331, 1331 (3d
Cir. 1992).  The decision about whether default judgment is
proper is primarily within the discretion of the district court.
Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

**A.   Standard of Review**

Once a party has defaulted, the consequence is that "the
factual allegations of the complaint, except those relating to
the amount of damages, will be taken as true." Comdyne I, Inc.
v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal
quotations omitted) (citing Thomas v. Wooster, 114 U.S. 104
(1885)).  Entry of default judgment where damages are not a sum
certain requires an application to the court to prove, inter
alia, damages.  Fed. R. Civ. P. 55(b)(2); Comdyne, 908 F.2d at
1149.  In addition, liability is not established by default
alone.  D.B. v. Bloom, 896 F. Supp. 166, 170 n.2 (D.N.J. 1995)
(citing Wright, supra, § 2688).  The Court must determine whether
a sufficient cause of action was stated, Chanel, Inc. v.
Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008), and whether
default judgment is proper.  Chamberlain v. Giampapa, 210 F.3d
154, 164 (3d Cir. 2000).

**B.   Sufficiency of Causes of Action**

4

In the present case, after being properly served on August 23, 2009 (Docket No. 5), the Defendant failed to appear or otherwise defend and the Clerk of the Court entered a default. Therefore, the first issue is whether the Plaintiffs have stated a sufficient cause of action.  As will be explained below, the Court determines that Coach has established Defendant's liability for the purposes of this default judgment motion.

     1.  <u>Federal Claims</u>

In their Complaint, Plaintiffs have asserted six federal claims against the Defendant: trademark counterfeiting (15 U.S.C. § 1114(1)(a)); trademark infringement (15 U.S.C. § 1114(1)(a)); trade dress infringement (15 U.S.C. § 1125(a)); false designation of origin and false advertising (15 U.S.C. § 1125(a)(1)(A)); trademark dilution (15 U.S.C. § 1125(c)); and copyright infringement (17 U.S.C. §§ 501-513).  Each was stated sufficiently to establish liability based on federal law.

     **a.   Trademark Infringement (15 U.S.C. § 1114(1)(a)) and False Designation (15 U.S.C. § 1125(a)(1)(A))**

Trademark infringement (Count II) and false designation (Count IV) are measured by identical standards.  <u>A & H Swimwear, Inc. v. Victoria's Secret Stores, Inc.</u>, 237 F.3d 198, 210 (3d Cir. 2000).  The record must show: (1) the plaintiff has a valid and legally protectable mark, (2) the plaintiff owns the mark,

and (3) the defendant's use of the mark causes a likelihood of confusion.  Id.

The first two elements are satisfied by registration and ownership of the relevant trademarks.  (Compl. ¶¶ 14-15.)  The third element is also satisfied.   In the Complaint (Compl. ¶ 49) and through exhibits, (e.g. Smith Decl., Ex. B) the record has uncontested assertions and evidence that are sufficient to show a likelihood of confusion between the counterfeit handbags and genuine Coach product.  Further, it is reasonable to believe that some consumers would be confused by these counterfeit products.  See Coach, Inc. v. Cellular Planet,  No. 2:09-cv-00241, 2010 WL 1853424, at *1, *4 (S.D. Ohio, May 7, 2010) (holding that although the counterfeit items could be distinguished from genuine Coach items because they were being sold out of a trunk of a car, the counterfeit nature of the products meant they were inherently likely to cause confusion).  Therefore, a cause of action for trade infringement and false designation has been sufficiently established.

### b.   Trademark Counterfeiting (15 U.S.C. § 1114(1)(a))

To establish trademark counterfeiting (Count I) the record must show (1) the defendant infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (2) the defendant intentionally used the trademark knowing it was counterfeit or was willfully blind to such use.  Chanel v.

6

Gordashevsky, 558 F. Supp. 2d at 537.  "The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit."  Chanel v. Gordashevsky, 558 F. Supp. 2d at 536-537.  Intent can be inferred from continued use after being given notice.  Platypus Wear, Inc. v. Bad Boy Club, Inc., No. 08-02662, 2009 WL 2147843, at *6 (D.N.J. July 15, 2009)

Here, both elements of trademark counterfeiting are met.  As discussed above, a trademark was infringed.  The alleged willfulness of the Defendant (Compl. ¶ 41) is confirmed by evidence showing the Defendant continuing to sell the handbags nearly three months after being served with notice of the Complaint.  (Smith Decl. ¶ 8, Ex. C.)  Therefore, a cause of action for trademark counterfeiting has been sufficiently established.

### c.   Trade Dress Infringement (15 U.S.C. § 1125(a))

To establish trade dress infringement (Count III), a plaintiff must show: (1) the allegedly infringing design is non-functional, (2) the design is inherently distinctive or has acquired secondary meaning, and (3) consumers are likely to confuse the source of the plaintiff's product with that of the

defendant's product.  McNeil Nutritionals, LLC v. Heartland
Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007).

Each of these elements was stated in the Complaint, (Compl.
¶¶ 57-59) and was not contested.  The Court is therefore
satisfied that the Plaintiffs have a meritorious claim for trade
dress infringement based on the non-functional nature of the
infringement, the distinctiveness of the Coach elements, and the
likelihood of confusion.

### d.   Trademark Dilution (15 U.S.C. § 1125(c))

To establish trademark dilution under the Lanham Act a
plaintiff must prove:

> (1) the plaintiff is the owner of a mark that
> qualifies as a 'famous' mark in light of the
> totality of eight factors listed in § 1125(c)(1);
> (2) the defendant is making commercial use in
> interstate commerce of a mark or trade name; (3)
> defendant's use began after the plaintiff's mark
> became famous; and (4) defendant's use causes
> dilution by lessening the capacity of the
> plaintiff's mark to identify and distinguish goods
> or services.

Times Mirror Magazine, Inc. v. Las Vegas Sports News, LLC, 212
F.3d 157, 163 (3d Cir. 2000); 800-JR-Cigar, Inc. v. GoTo.com,
Inc., 437 F. Supp. 2d 273, 293 (D.N.J. 2006).

As set forth in Count V of the Complaint, the Plaintiff has
shown that the relevant Coach marks are "famous" and Defendant's
actions lessen the capacity of such marks to identify and
distinguish Coach products.  (Compl. ¶¶ 75-76.)  The interstate
nature of the commerce and the timing of the Defendant's use of

the mark is not perfectly clear from the record.  Private investigator Erin Smith, employed by a Pennsylvania investigative firm, purchased a wallet at Defendant's store.  (Smith Decl. ¶¶ 2, 5.)  This is evidence that the Defendant is involved in interstate commerce.  Similarly, although uncertain due to the Defendant's failure to respond, the Defendant's use almost certainly began following the time when the Plaintiffs' marks became famous.  Therefore, the Court will accept that these elements are satisfied and a cause of action for trademark dilution has been established.

> **e.   Copyright Infringement (17 U.S.C. §§ 501-513)**

To establish copyright infringement pursuant to 17 U.S.C. §§ 501-513, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 361 (1991); <u>Dam Things from Denmark v. Russ Berrie & Co., Inc.</u>, 290 F.3d 548, 561 (3d Cir. 2002).  The copying element can be proven by showing that the defendant had access to the work and there are substantial similarities between the two works.  <u>Dam Things</u>, 290 F.3d at 561. Both elements have been sufficiently asserted to state a cause of action for copyright infringement.  (Compl. ¶¶ 84-86.)  Therefore, a cause of action for copyright infringement has been established.

> **2.   <u>State Claims</u>**

9

In their Complaint Plaintiffs have also asserted three state law claims: trademark counterfeiting (N.J. Stat. Ann. § 56:3-13.16); unfair competition (N.J. Stat. Ann. §§ 56:4-1, 56:4-2); and unjust enrichment.  The state common law claim was sufficiently stated and because federal liability has already been established, state statutory liability is also met.

### a.   State Statutory Claims

N.J. Stat. Ann. § 56:3-13.16 provides civil liability against a person who engages in trafficking of counterfeit marks and N.J. Stat. Ann. § 56:4-2 provides civil liability against a person who  appropriates trademarks.  These state law claims are similar to the federal Lanham Act claims and this Court has found liability under federal law to be sufficient to establish liability under state law.  See Axelrod v. Heyburn, No. 09-5627, 2010 WL 1816245, at *3 (D.N.J. May 3, 2010); Zinn v. Seruga, No. 05-3572, 2009 WL 3128353, at *27-*28 (D.N.J. Sept. 28, 2009); N.V.E., Inc. v. Day, No. 07-4283, 2009 WL 2526744, at *2 (D.N.J. Aug. 18, 2009).  Therefore, because Plaintiffs have established liability for their federal claims for trademark counterfeiting, the Plaintiffs have also established trademark counterfeiting under N.J. Stat. Ann. § 56:3-13.16 and unfair competition under N.J. Stat. Ann. §§ 56:4-1, 56:4-2.

### b.   Unjust Enrichment

The Plaintiffs have stated a claim under New Jersey common law for unjust enrichment.  (Compl. ¶ 107.)  Here the Defendant was profiting from counterfeit items based on Coach's reputation. It would be unjust for the Defendant to enrich itself without compensating the Plaintiffs, so a cause of action for unjust enrichment has been established.  See Howard Johnson Int'l, Inc. v. Vraj Brig, LLC, No. 08-1466, 2010 WL 215381, at *9 (D.N.J. Jan. 14, 2010) (citing Kopin v. Orange Prod.s, Inc., 297 N.J. Super. 353, 366-68 (N.J. Super. Ct. App. Div. 1997)).

In sum, each count of the complaint stated a sufficient cause of action that is supported  by evidence in the record. The Court now turns to whether default judgment is proper.

**C.   Default Judgment**

"Before imposing the extreme sanction of default [judgment], district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)).

The current record does not show any meritorious defenses. Because the Defendant did not respond, the Court cannot determine whether the Defendant had meritorious defenses that are not

reflected in the record.  The Plaintiffs have been prejudiced by the Defendant's failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion.  Defendant was properly served, yet failed to appear or defend itself in any fashion and has continued to sell bags.  (<u>See</u> Smith Decl. ¶8.)  It has been nearly a year and the Defendant has failed to contact the Court or the Plaintiffs.  This shows the Defendant's culpability in its default.  <u>See</u> <u>Platypus Wear</u>, 2009 WL 2147843 at *5.  Plaintiff is entitled to default judgment against Defendant Ocean Point Gifts.

### D.  Remedies

#### 1.  <u>Statutory Damages</u>

The Lanham Act provides that a plaintiff can elect to recover either actual damages based on the defendant's profits and the plaintiff's damages (15 U.S.C. § 1117(a)) or statutory damages (15 U.S.C. § 1117(c)).  The Plaintiffs have elected to recover statutory damages.  (Mem. in Supp. of Mot. for Default J. and Permanent Inj., 11.)  As discussed below, after considering past awards in this District, the point of sale, the extent of sales, and the lack of evidence concerning plaintiffs' losses, the Court will award $200,000 in statutory damages.

For statutory damages the plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as

12

the court considers just." 15 U.S.C. § 1117(c)(1)).  If the use
of the counterfeit mark was willful, the maximum increases to
$2,000,000 per mark per type of good.  15 U.S.C. § 1117(c)(2).
For use to be willful, a defendant must show an "aura of
indifference to plaintiff's rights" or a "deliberate and
unnecessary duplicating of a plaintiff's mark . . . in a way that
was calculated to appropriate or otherwise benefit from the good
will the plaintiff had nurtured."  SecuraComm Consulting Inc. v.
Securacom Inc., 166 F.3d 182, 187 (3d Cir. 1999) (citations and
internal marks omitted), superseded by statute on other grounds
as recognized by Banjo Buddies, Inc. v. Renosky, 399 F.3d 182,
187 (3d Cir. 1999).

     "In the absence of clear guidelines for setting a statutory
damage award, courts have tended to use their wide discretion to
compensate plaintiffs, as well as to deter and punish defendants,
often borrowing from factors considered for statutory damages in
copyright infringement."  Louis Vuitton Malletier & Oakley, Inc.
v. Veit, 211 F. Supp. 2d 567, 583-84 (E.D. Pa. 2002) (citing
cases showing wide range of statutory damages awarded by district
courts).  Because statutory damages are meant to serve as a
substitute for actual damages the Court should discern whether
the requested damages "bear some relation to the actual damages
suffered."  Bly v. Banbury Books, Inc., 638 F. Supp. 983, 987
(E.D. Pa. 1986); see also Gucci Am. V. Duty Free Apparel, Ltd.,

315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("To the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'") (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04[E][1], at 14-69 (2003.))

To assess whether the request is appropriate, the Court may be guided by past statutory damage awards. See Louis Vuitton Malletier, S.A. v. Mosseri, No. 07-2620, 2009 WL 3633882, at *3 (D.N.J. Oct. 28, 2009); N.V.E., 2009 WL 2526744, at *3-*4; Louis Vuitton & Oakley, 211 F. Supp. 2d at 583-84. The recent Lanham Act cases in this District for counterfeit products can be generally grouped under two categories: Internet cases and cigarette cases.

The typical Internet case involves a suit against someone selling counterfeit luxury items on the Internet. These cases often have high damage awards due in part to the wide market exposure that the Internet can provide. See Louis Vuitton v. Mosseri, 2009 WL 3633882, at *3 (awarding $25,141.31 per infringement for $4,072,892.22 total); Chanel, Inc. v. Guetae, 2009 WL 1653137, at *5 (D.N.J. June 8, 2009) (awarding $490,818.45 total); Chanel, Inc. v. Mosseri, No. 07-2619, Order at 2 (D.N.J. May 20, 2008)(awarding $180,000 per infringement for $3,780,000 total); Chanel v. Gordashevsky, 558 F. Supp. 2d at 538 (awarding $2,238,624.50 total); Chanel, Inc. v. Craddock, No. 05-

14

1593, 2006 WL 1128733, at *1 (D.N.J. April 27, 2006) (awarding
$100,000 per infringement for $8,100,000 total); see also Louis
Vuitton & Oakley, 211 F. Supp. 2d 567, 584-85 (awarding
$1,500,000 total and stating "the point of sale is very relevant
to the statutory damages discussion").

The typical cigarette case involves a small retail store
selling counterfeit cigarettes.  These cases have dramatically
lower damage awards.  See Philip Morris USA, Inc. v. Jaritza
Supermarket, Inc., No. 09-CVS-2372, 2009 WL 4496047, at *2
(D.N.J. Nov. 9, 2009) (awarding $4,000 total); Philip Morris USA,
Inc. v. Dorta Bars & Liquor, Inc., No. 07-4599, Order of June 1,
2009 at 3 (D.N.J. June 1, 2009) (awarding $1,000 each against two
defendants).  These awards were similar to cigarette case
settlement amounts enforced by this Court.  See Lorillard Tobacco
Co. v. Asian Am. Mkt., No. 06-cv-00948, Order at 2 (D.N.J. July
7, 2008) (settlement of $3,000); Lorillard Tobacco Co. v.
Atlantic Produce & Supermarket, No. 06-cv-951, Consent Judgment
at 1 (D.N.J. Feb. 13, 2008) (settlement of $20,000).

This case falls somewhere between the Internet cases and the
cigarette cases.  While the counterfeit products at issue were
not widely distributed via the Internet, they are counterfeit
luxury items of far greater value than cigarettes.  If the
Internet cases represent "the new era of counterfeiting," Louis
Vuitton & Oakley, 211 F. Supp. 2d at 584, this case reminds us

15

that there are still hucksters on the boardwalk capitalizing on

the famous marks of others.  To determine damages when there is

less guidance from other cases this Court has adopted factors

that have been used in the Second Circuit:

> (1) the expenses saved and the profits reaped; (2)
> the revenues lost by the plaintiff; (3) the value
> of the copyright; (4) the deterrent effect on
> others besides the defendant; (5) whether the
> defendant's conduct was innocent or willful; (6)
> whether a defendant has cooperated in providing
> particular records from which to assess the value
> of the infringing material produced; and (7) the
> potential for discouraging the defendant.

Platypus Wear, 2009 WL 2147843, at *7; Fitzgerald Publ'g Co. v.

Baylor Publ'g Co., 807 F.2d 1110, 1117 (2d Cir. 1986).

As discussed earlier in the context of trademark

counterfeiting, the Defendant's conduct was willful, so the

maximum award of $2,000,000 per counterfeit mark per type of good

sold is available.  Four types of goods were sold by the

Defendant that carried counterfeit Coach marks: handbags,

wallets, scarves, and hats[2].  Five Coach trademarks were

infringed: the "Signature C;"[3] "Coach Leatherware Est. 1941;"[4]

"COACH;"[5] "Coach & Lozenge Design;"[6] and "Coach Op Art"[7]).

---

[2] Neither scarves nor hats are explicitly listed as a class of
goods that the "Signature C" mark, Registration 2,822,318, is
registered for under International Class 24. But because the
class is broad and scarves and hats could be considered
"clothing," then this will be sufficient.
[3] Registration No. 2,822,318
[4] Registration No. 3,441,671
[5] Registration No. 1,071,000
[6] Registration No. 1,309,779
[7] Registration No. 3,696,470

Because there are four types of goods and five marks, the statutory damage amount must be not less than $20,000 or more than $40,000,000.  The Plaintiffs have requested one hundred times the minimum statutory damages, $100,000 per mark per good for a total of $2,000,000.  However, the Plaintiffs have provided no information about their lost revenue or the value of their trademarks, trade dresses, and copyrights.  While the Court is tempted to follow the approach of Philip Morris v. Dorta Bars and ask for an affidavit supporting its damage request, 2009 WL 872026, at *3 (D.N.J. Mar. 30, 2009), the Court recognizes that the root of this deficiency is Defendant's failure to respond.

The Court chooses to follow the approach of Platypus Wear and award $10,000 per infringement for $200,000 total, ten times the minimum statutory damages.  2009 WL 2147843, at *7.  This amount is within the guidelines established by Congress, takes into account the wilfulness shown by continuing to sell bags after receiving the Complaint and the culpability of failing to respond, and is significant enough to serve as compensation to the Plaintiffs and a deterrent to both the Defendant and others.  This award also acknowledges that the sales took place at a small shop on the boardwalk rather than the Internet.  This award is consistent with another recent case in this District which only increased the award beyond $10,000 per infringement due to the mass-distribution of a banned substance using the Internet.

17

N.V.E., 2009 WL 2526744, at *4 (awarding $250,000 even though plaintiff requested $2,000,000).  Because neither the Internet nor a banned substance is present here, ten times the minimum, namely $10,000 per infringement, is appropriate, for each of the twenty infringements.

To check whether this amount "bears some relation," Bly, 638 F. Supp. at 987, the Court will approximate what the Plaintiff may have gotten based on an "actual damages" calculation under 15 U.S.C. §§ 1117(a)-(b).  See Malletier v. Apex Creative Int'l Corp., 687 F. Supp. 2d 347, 355-356 (S.D.N.Y. 2010).

During the November 20, 2009 visit[8] by Investigator Smith there were 25 bags priced at $24.99, 60 handbags priced from $39.00 to $59.00 and 5 scarf and hat matching sets with an unstated price.  (Smith Decl. ¶ 8.)  If the Court assumes that the scarf and hat sets were also priced $39.00 to $59.00, then the value of the displayed inventory that day was between $3,159.75 and $4,459.75.  Assuming the store sold this volume of displayed inventory each week and the store had a 300% profit margin, then the amount of trebled damages would be between $7,109.44 and $10,034.44 per week.  Thus, the "actual damages" would equal the Court's determination of statutory damages at some point between 20 and 28 weeks of sales.  This period of time

---

[8] This visit identified the largest inventory of any of the investigator's visits.  During the July 13, 2009 visit by Investigator Smith there were "at least 50 different counterfeit Coach products" but no price was entered into evidence.  (Smith Decl. ¶ 4.)

is approximately equal to the tourist season on the Jersey Shore. The Court's determination is more reasonable than the requested award of $2,000,000 which would not approximate actual damages without four to six years of brisk year-round sales of counterfeit items.

Thus, considering the limited record of losses, the point of sale, and the likely extent of the Defendant's business and consistent with other awards in this District, the Court will award $10,000 per infringement for $200,000 total.

### 2. Costs and Attorney Fees

In addition to statutory damages, Coach asks for both attorney fees and costs, which their evidence shows to be $7,648 for attorney fees, $443.33 for investigative fees, and $434.95 for costs.

The costs of actions brought under § 43(a), § 43(d), or a willful violation under § 43(c) of the Lanham Act (codified at 15 U.S.C. § 1117(a), (d), & (c), respectively) can be recovered pursuant to § 35(a) (codified at 15 U.S.C. § 1117(a)). In "exceptional cases" the court may award reasonable attorney fees. 15 U.S.C. § 1117(a). "Exceptional" has been interpreted by the Court to mean involving culpable conduct. Securacomm, 224 F.3d at 280. Because this case involved the culpable conduct of continuing to sell goods after the Complaint was received, then consistent with other decisions by this Court, attorney fees and

costs will be awarded to the Plaintiffs.[9]  See Louis Vuitton v. Mosseri, 2009 WL 3633882, at *4; Chanel v. Gordashevsky, 558 F. Supp. 2d at 539.

Attorneys fees can includes fees for investigators working under the direction of an attorney.  Chanel v. Gordashevsky, 558 F. Supp. 2d at 539 (citing Louis Vuitton S.A. v. Downtown Luggage Ctr., 706 F. Supp. 839, 842 (S.D. Fla. 1988); 130 Cong. Rec. H12076, H12083 (Oct. 10, 1984) (J. Explanatory Statement on Trademark Counterfeiting Legis.)).  Thus, in this case the fees that the Plaintiffs have paid to the investigative firm can be included in damages.

        3.   Permanent Injunction

Coach also seeks the equitable relief of a permanent injunction to enjoin the Defendant from infringing Coach's trademarks.  This request is consistent with 15 U.S.C. § 1116(a). The Supreme Court requires that any plaintiff seeking a permanent injunction to show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

---

[9] In their brief, Plaintiffs request $8,113.25 in attorney fees. The supporting documents (Davis Decl. ¶ 8; Confoy Decl. ¶ 8) show attorney costs as $7,648.  The Court will only award what the evidence shows.

eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)
(citations omitted).

### a.    Irreparable Injury

The Third Circuit has explicitly stated that "once the
likelihood of confusion caused by trademark infringement has been
established, the inescapable conclusion is that there was also
irreparable injury."  Pappan Enter.s, Inc. v. Hardee's Food
Sys.s, Inc., 143 F.3d 800, 805 (3d Cir. 1998) (quoting Opticians
Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 1976 (3d
Cir. 1990).  Thus, because a likelihood of confusion has been
shown, the requirement of irreparable harm has been met.

### b.    Inadequacy of Remedies at Law

While a remedy at law would provide a degree of monetary
relief, it will not compensate for the injury to Coach's
reputation or necessarily prevent future trademark infringement.
Louis Vuitton v. Mosseri, 2009 WL 3633882 at *5; See also Audi AG
v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006) (stating when there
is potential for future harm there is no adequate remedy at law).
A remedy at law would be inadequate to compensate Coach.

### c.    Balancing of Hardships

The only hardship imposed upon the Defendant is that they
obey the law.  On the other hand if an injunction were not issued
then Coach suffers the hardships that gave rise to this suit,
loss of reputation and sales.  Louis Vuitton v. Mosseri, 2009 WL

3633882 at *5 (citing <u>Microsoft Corp. v. McGee</u>, 490 F. Supp. 2d 874, 882-83 (S.D. Ohio 2007).

### d.   Public Interest

The Third Circuit has recognized that the public has an interest in trademark and copyright protection.

> Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources that are invested in the protected work.

<u>Apple Computer, Inc. v. Franklin Computer Corp.</u>, 714 F.2d 1240, 1255 (3d Cir. 1983) (quoting <u>Klitzner Indus., Inc. v. H.K. James & Co.</u>, 535 F. Supp. 1249, 1259-60 (E.D. Pa. 1982).  Issuing an injunction will serve the public interest goals of preventing consumer confusion and the trademark holder's property interest. <u>Microsoft</u>, 490 F. Supp. 2d at 883.  Here the public interest is served by issuing an injunction.

Because each of the <u>eBay</u> requirements have been met by Coach, the Court will grant Coach the relief it seeks by enjoining Defendant Ocean Point Gifts from infringing Coach's trademarks and copyrights.  Ocean Point Gifts must also surrender the infringing products for destruction by freight prepaid to Coach.

In sum, the Court will grant $200,000 in statutory damages under the Lanham Act and $8,526.28 in attorney fees and

litigation costs, bringing Plaintiffs' total recovery from Defendant Ocean Point Gifts to $208,526.28.  In addition, the Court will permanently enjoin Ocean Point Gifts from infringing Coach's trademarks and copyrights in the future and require it to surrender all infringing products it currently possesses.

## III. CONCLUSION

For the foregoing reasons the Court will grant the Plaintiffs' motion for default judgment, award a default judgment of $208,526.28, and issue a permanent injunction.  The accompanying order for default judgment and permanent injunction shall be entered.


**June 14, 2010**                          **  s/ Jerome B. Simandle    **
Date                                       JEROME B. SIMANDLE
                                           United States District Judge